HAWTHORNE, Justice.
This proceeding was instituted by Carl E. Woodward, Inc., to recover from John M. Bacon $5,291 alleged to be the balance due under a building contract. Bacon reconvened, alleging that the building constructed for him by Woodward, Inc., encroaches on property of an adjacent owner to the north and asking that he be awarded $5,-028.99, the estimated cost of correcting this encroachment. After trial on the merits there was judgment awarding Woodward $1,921.98 as the balance due on the contract less $3,369.02 which the trial judge fixed as the cost for correction of the encroachment. Woodward appealed, contending principally that it is entitled to the full balance due on the contract, and that no sum should be allowed Bacon for removing the alleged encroachment. Bacon answered the appeal, praying that he be allowed the full amount sought for removal of the encroachment.
Bacon is the owner of a tract of land acquired from the Louisiana & Arkansas Railway Company, situated between the Air Line Highway and the railway. According to a plat furnished to him by the railway, the south line of this tract is 600 feet, the north line 600.44 feet, the west line 136.1 feet, and the east line 113.1 feet. In 1951 Bacon began negotiations with the corporation through its president, Carl E. Woodward, a registered engineer, for the purchase and construction on this property of a steel-frame warehouse building, or a prefabricated metal warehouse of a type known as a “Butler building”. During the negotiations Bacon discussed with the president of the corporation the advisability of employing an architect, and was informed by the president that this would not be necessary since the corporation would perform the functions of both architect and contractor. Bacon gave Woodward a copy of the survey or plat furnished him by the *65 railroad. The corporation then prepared the contract, to which were attached plans and specifications drawn and prepared by one of its employees, a civil engineer. The contract was duly executed by the parties in November, 1951, and the owner agreed to pay the contractor $31,791 for the purchase and construction on his property of a prefabricated warehouse building 60 feet wide by 134 feet long. The proposal to do this work, which was made a part of the contract, provided that the contractor was to furnish all labor, materials, etc., “for the following construction work on your property on the Air Line Highway, Jefferson Parish, La., in accordance with our drawing attached herewith and specifications noted thereon * * * ”.
In due course after the execution of the contract work was begun on the construction of the building. While the foundations were being laid upon the north side adjacent to the right of way of the Air Line Highway, Bacon received a complaint from United Gas Pipe Line Company that the foundation footings of the building then under construction encroached beyond the northern boundary line of his property and were too close to the company’s gas pipeline servitude in the Air Line Highway. Bacon referred this complaint to the contractor. The contractor agreed to correct the encroachment at its own expense, and actually made some adjustment of the foundation on the north side of the building in an effort to accomplish this purpose. Thereafter the corporation wrote Bacon the following letter:
“This will confirm our verbal statement to you that your warehouse building which we are constructing for your account on the Air Line Highway, Jefferson Parish, La., is entirely within your property and that no part of the building or its foundation or foundation footing extends past your property line or encroaches on the adjoining right-of-way of the Air Line Highway.
“Very truly yours,
“Carl E. Woodward, Inc.,
“By: Carl E. Woodward
“President”
About this time Woodward also furnished to Bacon a drawing (No. 3-4-51) showing the position of the building on his lot, which according to Woodward’s testimony showed no encroachments.
In due course the building was completed. About this time Bacon engaged another contractor to erect an additional warehouse on the same tract, and furnished this contractor with the drawing which had been given to him by Woodward so that this other contractor could locate the existing “Butler building” and fix the lines for the building he was to construct. This contractor found that the plat or map was not drawn to scale and hence was incorrect, and at his request Bacon had a survey made. This survey, made by H. E. Landry, civil engineer, showed that the building erected by Woodward was still encroaching on its north side, and particularly at its northeast corner, on the Air Line Highway. Upon receiving this information Bacon refused to accept the “Butler building” or make any further payment to Woodward.[1] Woodward then instituted this suit to recover the balance due under the contract.
It is Woodward’s contention that the parties to this building contract contemplated and contracted for the erection of a warehouse building with its subsurface foundation protruding beyond the south line of Bacon’s property into the adjoining property of the Louisiana & Arkansas Railway and with its subsurface *66 foundation protruding beyond Bacon’s north property line into the Air Line Highway right of way.[2] In support of this argument the contractor relies on the drawings which are attached to and made a part of the contract, stating that these drawings clearly and affirmatively show the encroachments. It then argues that the contract is the law between the parties, that each was entitled to receive what the contract provided, and that neither party could change or abrogate the contract without the consent of the other.
We do not think that the drawings or blueprints, in spite of what the contractor says, clearly and affirmatively show the encroachments in question. A person able to read and understand blueprints might determine that the subsurface foundation of the proposed warehouse would protrude onto the adjoining properties on both the north and the south sides, but he could do this only by a process of calculation after considering more than one page of the blueprints. The blueprints do not designate any encroachments as such, the encroachments are not apparent to or easily detected by a layman, and a layman certainly could not discover them by the exercise of ordinary care. Moreover, we must bear in mind that the contractor prepared the drawings for the construction of the building from a map or plat of the property furnished by the owner; and even if we concede that one skilled in the reading and interpretation of blueprints could have ascertained that the subsurface foundation of the building would encroach on adjacent property, this in our view was a defect in the drawings for which the owner was not responsible.
Bacon admits that he and the president of the corporation went over these plans and specifications, but states positively that no mention was made of any encroachments; and the corporation’s president does not say that he informed Bacon that the subsurface foundation of the building would encroach on the adjacent properties to the north and the south. Bacon takes the position that he knew nothing of these encroachments until he received a complaint from the United Gas Pipe Line Company.
The contract itself provides for the building to be constructed on the owner’s property in accordance with the drawings attached, and under the facts and circumstances of this case we think it was the duty and obligation of the contractor to construct the building entirely within the boundaries of that property. It appears to us that the difficulty arose because the contractor was attempting to erect a rectangular building 134 feet deep across Bacon’s property which had a depth on the west side of only 136.1 feet and which was progressively less deep as one moved eastward.
Moreover, we do not think that Woodward has established that it was the intention of the parties to this contract for the building to encroach on the adjacent properties to the north and the south. That such was not the intention of the parties seems to be clearly established by Woodward’s letter stating that the warehouse building was entirely within Bacon’s property and that no part of the building or its foundation footing extended past his property line, and also by Woodward’s drawing No. 3—4—51, furnished about the same time, showing the position of the building on Bacon’s lot, which according to Woodward’s president’s testimony showed no encroachment. Moreover, if it was the intention of the parties that the building encroach on the adjacent properties, then why would Woodward at its own expense make some adjustment of the foundation of the north side of the building in an effort to correct the encroachment when it was notified of the complaint of the United Gas Pipe Line Company? From the time of this letter and drawing there can be no doubt that it was the intention of both par *67 ties to the contract that the building was to be constructed entirely on the owner’s lot and was not to encroach on the adjacent properties.
Woodward argues that in the event the court should find that the drawings attached to the contract do not establish that the parties contracted for these encroachments, then Bacon has not discharged the burden of proving the exact location of the north line of his property; or, stated in other words, that Bacon has not proven the existence of the encroachment on the adjacent property to the north.
To prove this encroachment Bacon had surveys made by H. E. Landry, surveyor and engineer, and by F. C. Gandolfo, Jr., surveyor and engineer, and both of these surveyors testified to the existence of the encroachment. Woodward attacks the method by which these surveyors established the north line of Bacon’s property, but, in any event, they testified positively that the encroachments existed. The president of Woodward, Inc., admitted on cross-examination that he had a survey made of Bacon’s property by Ernest L. Eustis after he was notified of the encroachment shown on the Landry survey. He did not call Eustis, however, or offer this survey in evidence in an effort to discredit the surveys made by Landry and Gandolfo. If the Eustis survey showed no encroachments, we cannot help but believe that Woodward would have offered it in evidence. We think that Bacon has established the existence of the encroachment on the property adjacent to the northern boundary of his lot.
Quantum
Woodward’s president testified that the cost of eliminating the encroachment on the adjacent property to the north would be approximately $1,555. On the other hand, Bacon’s witness, George McCoy, an experienced general contractor, made a detailed estimate of the cost of correcting the encroachment which totalled $5,028.99. This detailed statement of McCoy’s shows the estimated cost of labor, materials, and other items, whereas Woodward’s president testified to the total cost but made no effort to break this figure down into the component items of labor, materials, etc. In other words, he made a general statement of the cost and did not support it by any exact figures.
According to the testimony of the surveyor Landry the building itself encroached at its northeast corner on the Air Line right of way, and the encroachment gradually decreased to “the point of zero” at the building’s northwest corner. To correct the encroachment McCoy proposed to cut off approximately two feet from the north end of the building, and estimated the cost of demolishing and repairing the north end of the building including wall and foundation.
Woodward complains that McCoy’s estimate did not cover the cost of repairing the defective work, that no one testified that it was necessary to cut off two feet from the north end of the building in order to repair the defective work, and, further, that Bacon did not show that McCoy’s estimate was the lowest bid for the work proposed. The corporation’s president admitted in his testimony that if the encroachment existed on the north side as contended by Bacon, McCoy’s estimate covered the work that would have to be done to take care of the situation. We have already found that this encroachment did exist. If McCoy’s estimate is too high for the work he proposed to do, Woodward had every opportunity to show in what respect it is too high since the estimate is broken down item by item and shows the cost of each. There is nothing in this record, however, to suggest that McCoy’s estimate is high for the work he proposed to do to correct this encroachment.
The trial judge allowed $3,369.02 as the cost of correcting the encroachment. Apparently he accepted the figures of McCoy’s estimate for the cost of materials and labor *68 necessary for the proposed work, but disallowed the amounts shown for sales tax, insurance, profit, bond cost, etc. As we view the matter, these latter items are as much a part of the cost of correcting the encroachment as are those allowed by the trial judge, for certainly they will have to be paid by the owner. We shall therefore amend the judgment to allow the owner $5,028.99, the full amount shown by McCoy’s estimate. Therefore, from $5,291, the balance due by Bacon to Woodward under the contract, will be deducted $5,028.-99, the cost of correcting the encroachment, and Woodward will have judgment for the balance, $262.01.
For the reasons assigned the judgment appealed from is amended by decreasing the award in favor of plaintiff Carl E. Woodward, Inc., from $1,921.98 to $262.01. In all other respects the judgment is affirmed.

. At this time there was a balance due Woodward of $11,791.00 under the contract. Subsequently the parties agreed that Bacon would occupy the building and pay the contractor $6500.00 without prejudice to the rights of either party. This left a balance due under the contract of $5291.00.

. We are concerned in this suit only with the encroachment on the north into the Air line right of way. Apparently no difficulty has arisen in regard to the encroachment on the south into the railroad’s property.